[Civ. No. 7320.   Third Dist.   May 6, 1947.]

ANNA MARY LEWIS, as Administratrix, etc., Appellant, v. ANTONE LEWIS SILVEIRA, Respondent.

Ralph H. Lewis for Appellant.

Henry & Bedeau for Respondent.

SCHOTTKY, J. pro tem.—Plaintiff and appellant, as administratrix of the estate of Manuel Lewis, deceased, commenced an action against defendant and respondent, setting forth four causes of action in her complaint. In the first she alleged that defendant was holding certain real property on ''P'' Street in Sacramento in trust for decedent upon the promise of defendant to reconvey upon demand, which she alleged defendant refused to do. The second cause of action is identical with the first except that certain real property on Second Street is the property involved. The third cause of action

is to quiet title to certain personal property at 1121 Second Street in Sacramento. In the fourth cause of action plaintiff and appellant claimed that the bar and café business at 1121 Second Street was at the time of the death of decedent on December 30, 1943, a partnership in which decedent owned a one-half interest. In the prayer of her complaint plaintiff asked to have her title as administratrix to the real and personal property quieted and to establish a partnership in the bar and café business and to require defendant to render an accounting thereof and to liquidate said business.

Defendant's answer denied the material allegations of each cause of action. In addition, he filed a cross-complaint in which he alleged that on April 19, 1926, decedent and plaintiff had executed and delivered to him their promissory note in the sum of $14,000, and that on April 23, 1927, decedent had executed and delivered to him his promissory note in the sum of $1,325; that the two parcels of property had been placed in his name at the request of decedent and as security for the indebtedness owing on said promissory notes, upon which no principal or interest had been paid, and that he held the real property as security for the payment of the notes. He prayed that the court determine that he had a mortgage on the real property for the amount due and that the same be foreclosed.

The answer of plaintiff and appellant to the cross-complaint denied that the real property had been conveyed to defendant as security for the notes, or that a mortgage existed or that no payments had been made. However, plaintiff and appellant did not deny the genuineness and due execution of the notes.

The trial court found in favor of defendant on all issues except as to the ownership of certain personal property described as a front bar, back bar, three pictures and twelve cups. Judgment in accordance with the findings was entered establishing a mortgage on the two parcels of real property to secure an indebtedness of $33,560, and directing that said mortgage be foreclosed. Judgment was also entered that defendant was the sole owner of the café and bar business and the personal property therein except the aforementioned front bar, back bar, three pictures and twelve cups, and quieting his title thereto. Plaintiff's motion for a new trial was denied and this appeal is from the judgment.

Appellant does not attack the portions of the judgment relating to the café and bar business and personal

property, but does make a vigorous attack upon the sufficiency of the evidence to support the findings that the conveyances of the real properties were made to secure an indebtedness of decedent and that an indebtedness existed between decedent and defendant at the time of decedent's death.

Before an appellate tribunal is justified in reversing a judgment upon the ground of the insufficiency of the evidence, it must appear from the record that, accepting the full force of the evidence adduced, together with every inference favorable to the prevailing party which may be reasonably drawn therefrom, it still appears that the law precludes the prevailing party from recovering a judgment. The evidence must be construed most strongly against the losing party. Every favorable inference which may fairly be deduced from the evidence should be resolved in favor of the prevailing party. The prevailing party's evidence must ordinarily be accepted as true, and evidence which contradicts it must be disregarded. Bearing in mind this familiar rule, which, we are constrained to state, is too often disregarded by counsel in arguing conflicting evidence before an appellate court, we shall give a brief summary of the evidence.

Appellant and plaintiff is the widow of Manuel Lewis, who died December 30, 1943. Manuel and the respondent, Antone Lewis Silveira, were brothers. Both were born in the Azores Islands and migrated to California in 1901. Manuel's name was Manuel Lewis Silveira but about 1924 he had it changed to Manuel Lewis.

Subsequent to the death of Manuel, his estate was probated in Sacramento County and appellant was appointed administratrix. At the time of Manuel's death two parcels of real property situated in Sacramento County stood of record in Antone's name—one parcel is described as the west one-half of Lot 7 in the block bounded by 10th and 11th and "O" and "P" Streets (hereinafter referred to as the "P" Street property), and the other is described as the south one-half of Lot 8 in the block bounded by Second and Third and "K" and "L" Streets (hereinafter referred to as the Second Street property). Manuel at one time had been a man of considerable means, owning five or more parcels of real property, including the "P" and Second Streets properties. He also caused the Lewis Apartments at 13th and "N" Streets in Sacramento to be constructed, but lost it to the Pacific States Savings and Loan Association about 1931.

Manuel also lost the "P" and Second Streets properties in 1936 to California Trust and Savings Bank (then in liquidation) which had a deed of trust thereon. After title had been vested in the bank, Manuel decided to repurchase the properties—the Second Street property for $10,000 and the "P" Street property for $6,500. He made a down payment of $2,500 on the Second Street property and $1,625 on the "P" Street property. Concurrently therewith and on July 17, 1936, contracts of purchase and sale for each of these properties were executed by the bank and at Manuel's request and direction Antone was named as purchaser. The contract for the Second Street property called for monthly installment payments of $75 on principal plus 6 per cent interest, and the contract for the "P" Street property called for monthly installment payments of $50 on principal plus 6 per cent interest. Manuel paid the installments on the contracts from rentals he received from the Second Street property (the "P" Street property was not rented but was occupied by Manuel's family). On February 27, 1939, the bank, at Manuel's request and direction, executed and delivered a deed to the Second Street property, conveying the same to Antone. At the same time and at Manuel's request, respondent borrowed $4,575 on this property which was used to pay the bank on the contract. Antone executed a note for that amount and a deed of trust on the property to secure the note. Payments were made on this note by Manuel from the rentals. By September 23, 1943, the debt had been paid and a deed of reconveyance was recorded on that day. The contract on the "P" Street property was not paid in full until September 15, 1943, at which time, at Manuel's request and direction, a deed to that property conveying the same to Antone, was executed and delivered. Both deeds were recorded at Manuel's request.

On April 19, 1926, Manuel and the appellant, Anna, borrowed from Antone $14,000 and gave him a note executed by them for that amount dated April 19, 1926, payable five years after date. On April 23, 1927, Manuel borrowed an additional $1,325 from Antone and gave him a note for that amount dated April 23, 1927, payable on or before one year after date. This money was borrowed to aid Manuel in the construction and completion of the Lewis Apartments, which he was then building. Both notes provided for six percent (6%) interest, payable annually, and each contained a provision

renewing the notes from year to year and hence were not barred by the statute of limitations. (*Hasman* v. *Canman*, 136 Cal.App. 91 [28 P.2d 372].) At all times since execution, the notes remained in Antone's possession. On April 19, 1931, the day that the $14,000 note matured, Manuel and Anna executed and delivered to Antone another note for $19,156.25, but for which Antone advanced no money. Antone held this note in his possession until the trial. It is a fair inference that this note was an acknowledgment of the indebtedness represented by the 1926 and 1927 notes.

Defendant and respondent testified several times during the course of the trial that the parcels of real property were placed in his name to secure the indebtedness owing him by his brother and also that nothing had been paid on either principal or interest of said notes. Appellant attacks the testimony of respondent as being so conflicting and contradictory that it is worthless and unbelievable. It is apparent from the record that respondent was an old man who was quite illiterate and ignorant. He had to speak through an interpreter and it is apparent that he sometimes failed to understand the questions. There is nothing inherently improbable in his testimony and it was for the trial court to judge its weight. The following statements of the learned judge in the opinion filed by him are fully supported by the record:

"Why were the contracts made in the name of Antone, and why did he not convey them to his brother Manuel after they were paid in full and before Manuel passed away, Antone claims the reason was because it was understood that he was to hold the property as security for the notes owing to him.

"His claim is substantiated to some extent by the fact that (a) the notes were never paid; (b) The property must have been taken in the name of Antone for some reason, and it would be plausible to assume that Manuel owing his brother sums, a large amount, wished to protect him; (c) No demand was ever made by Manuel for conveyance; (d) While there are many contradictions in Antone's testimony, still he has been corroborated by a number of witnesses as to admissions made by Manuel as to the existence of an indebtedness owing from Manuel to him, and also the testimony of several witnesses indicated that Manuel recognized that Antone was holding the property for protection for the indebtedness owing by the former to Antone. Thus, John Silva testified

that Manuel told him his brother had loaned him large sums of money on some notes years ago, which had never been paid, and stated that the property did not belong to him, but to his brother. To Joe Silva Manuel stated that his brother had a mortgage for $17,000 on his property on second street. The witness Mary Soares stated that Manuel said he owed his brother Tony a lot of money he hadn't been able to pay, so he had everything in his name; that his money was well protected. Other witnesses were generally to the same effect.''

There was, of course, some evidence upon which contrary findings could be based, but an appellate tribunal is not concerned with mere conflicts in evidence. It is a sufficient answer to the contentions of appellant to say that there is ample evidence in the record to support the conclusion reached by the trial court.

The only errors urged by appellant being that the evidence does not support the findings and judgment, it follows that the judgment should be affirmed.

Judgment affirmed.

Peek, J., and Thompson, J., concurred.